May it please the court, my name is Rene Valladares and I represent Mr. Bush in this matter. In this case, the key question is whether at the time of the commencement of the search of the Apoahana address, Officer Brown had sufficient proof that Mr. Bush resided there at that address. The court, the district court concluded that he did. There are two clusters of problems with the court's conclusion. The first one is that the court did not specify whether that conclusion was being driven by a reasonable suspicion standard or a probable cost standard. By the way, you may not be aware, but this whole question of probable cost versus reasonable suspicion is before an en banc panel going forward. Yes, Your Honor. It's called Motley v. Scott. I understand, Your Honor. I understand the opinion was withdrawn and at this point it is in an en banc panel. Just waiting for the en banc panel, I think. Yes, sir. Well, I have kind of two sets of questions. At what specific point would you contend that the search began? Precisely when, at what juncture did the search begin? Your Honor, that's a good point because that's what you told us. That's the key deal. Yes. From your perspective, we have to figure out when that is so we can then determine what knowledge or probable cause or reasonable suspicion or whatever the officer had at that point. Was it when he said, was it when he agreed to show him around? I would say that definitely that is the point. Well, at the point that he agrees to show him around then, given all these facts, why isn't there probable cause to believe that that's residence? His listed residence, he wasn't there. They attempted to contact him numerous times. They went to the location and I think you have at least probable cause to believe that's no longer his residence. So then the officer checks the record and finds out, well, he had a previous residence. He goes there and there he is. And he appears to be exercising dominion and control. So at the point he says, sure, I'll show you around. I mean, isn't it reasonable at that point for somebody to assume, well, this is his residence? And if that's the case, then they have probable cause to conduct the search. Yes, Your Honor. We believe it's not because the factual conclusions derived by the court concerning those points are clearly erroneous. Essentially, the court said that the officer had attempted contact telephonically and in person. Right. Now, they are – Is that clearly erroneous? Yes. Yes. It's our position that they are. The position that they are as far as the telephonic ones, for two reasons. One, the officer stated that there is a subject chronology that is kept in cases such as this one. The subject chronology contains all important information concerning a case. Certainly, I would submit that it is – that it's reasonable to conclude that this would be something that would be in that subject chronology. The officer stated that neither of those two telephonic contacts were logged into that subject chronology. Well, the district court didn't have any trouble with the credibility of the officer. The district court didn't. It's – again, my position is that the court was clearly erroneous in that regard. Because that's a hard argument. Credibility is really almost bulletproof coming from a trial court. And I understand that. I appreciate that. It's my – obviously, my position being that the court was, again, clearly erroneous in finding Sol, especially due to the clear either error or fabrication that Officer Brown engaged in, in testifying that – about what he found in the hallway closet. In the hallway closet, he stated that he had found three sets of dry cleaning items that they matched number for were in a bag that was also found in the hallway closet. The bag contained items that were owned by Mr. Bush. Investigation that we engaged in after the hearing revealed that that was simply not the case. None of the items that were described in the laundry tickets that were in the bag of Mr. Bush were – had even been picked up by the time of the hearing. It's our position that that has a significant doubt on the testimony of the officer. Also, going back to the telephonic contacts – I'm sorry. Sorry. I was just – you know, a lot of this goes to just the credibility, as Judge Trott said. That's a tough – that's a tough argument on appeal. And I'm curious. The officer walks in the house, and you don't – there doesn't seem to be any dispute that he was, I guess, invited in. And as he walks in through the door, he – there's no dispute that he apparently smelled marijuana, if I'm not mistaken. And the officer testifies that he – that he looked around. And then he said, show me your room. And Bush takes him to the back room. Now, there is dispute as to that. As to what? As to which? As to whether Mr. Bush ever said – Take me to your room? Yes. I am taking you to my room. Well, let me ask you this. When he first walks in and he looks around, was that a search? Well, even if it was a search, it was a search that nothing suppressible happened after – pursuant to that particular search. A few minutes ago, I thought you conceded that the search didn't begin until he agreed to show him around. Yes, that is my position, though. Okay. Yes. Yes. Yes. Okay. But at any rate, the second point that brings in question – I understand that I am against a difficult standard here, as far as the clearly erroneous standard, as far as the telephonic calls, is that if the testimony of Officer Brown is traced throughout his testimony or throughout the evidentiary hearing, his testimony certainly seems to get better from a partisan standpoint concerning those telephonic calls. Initially, he states that basically the calls – he remembers the calls were made simply because that's part of pattern and practice. Then he states that the calls were actually made. Then he actually remembers the specific dates in which the calls were made. That, again, seems to be – Those are great arguments for the trial court. There's no question about it. Yes. And, again, being in our position here, that those are – that the findings of the district court were clearly erroneous. Now, it's our same position as far as the visits to the residents, that the court finding that those visits did occur was clearly erroneous, number one, for the same reason, that that was not memorialized. And the second set of reasons as far as the visits is that the officer states at some point that he left two sets – or two cards during the visits, and another point that he left only one card. At this point, I have less than two minutes. I'd like to reserve the time for – Yes, that's fine. Thank you. Good morning. William Reed, Assistant U.S. Attorney, Las Vegas, Nevada, for the United States. Your Honors, this case involves a high-risk probationer who was under intensive supervision where the probation officer was required to visit with the probationer two to three times a month. This individual had a problematic track record leading up to the juncture of the search that occurred that day. He'd previously been revoked in March of that year, about four months prior to this search. The officer inherited this case from another officer. There was information in the chronological file that the probationer had a checkered residential history. The prior probation officer had had difficulty in locating Mr. Bush from time to time at the residence that he had listed. This probation officer, Officer Brown, had made reasonable efforts to try to locate Mr. Brown at the listed address, the Santos address, was unable to do so. At that point, he referenced the chronological history and determined that throughout the course, the extensive course of supervision prior to his involvement, Officer Brown said Mr. Bush had resided at this Appawanna address. Therefore, he took it upon himself to take the reasonable step of going to that address to try to locate Mr. Bush after exhausting every other reasonable option he had to locate him at the Santos address. At that point, he had arguably reasonable suspicion to believe he would be at the Appawanna address when he indeed found Mr. Bush at the door after Mr. Bush's girlfriend answered the door and advised that Mr. Bush was inside. When Mr. Bush was inside, at that point, Officer Brown had probable cause that... That he lived there? That that was his residence? I would submit, Your Honor, that he had probable cause. When he came to the door? Yes, Your Honor, given all the other historical information documented that he had lived there throughout the other course of events and that that would arguably have given him probable cause. But even after that, being allowed inside and asked to be shown around, if not at the point at the threshold of the door when he directed him to his room, that would have been probable cause at that point, the government would submit. What do you make of all the evidence of dry-cleaning confusion? Your Honor, as that was previously discussed a moment ago, that's a very good point. The issue of credibility in this case was hotly contested, I would characterize it, at the district court, both before the magistrate judge and later, to some extent, before the district judge. It went to the magistrate judge twice, is that correct, after they found the evidence of dry-cleaning confusion, then it was sent back to the magistrate for another look-see, is that right? Yes, Your Honor, there was not additional evidence presented, but the record was supplemented by additional briefing on both parts, and the magistrate judge issued a supplemental report and recommendation. And then the matter was addressed by the district judge, who, at the time of the entry of plea, the district judge found and placed on the record that it was reasonable for the probation officer to have concluded that Mr. Bush was living at the Appalachian Address. He went to that extent, and that this was either a bruise or a deception to keep the probation officer from investigating the true residence of Mr. Bush. So, the credibility, though, was hotly contested. It was fairly presented to the magistrate judge and the district court, and it was resolved in favor of the government. And as Your Honor has suggested, the clearly erroneous standard is one that is significantly deferential. And it has been, this issue of credibility has been parsed out very extensively by the district court. How would you answer Judge Stratton's question about when the search commenced? I would characterize the search as having actually commenced when the officer, Officer Brown, was physically opening drawers looking for contraband after having smelled the odor of marijuana. Up to that point, Mr. Bush was cooperating with Officer Brown, showing him around the residence as Officer Brown had requested. At the time the search commenced, what did the officer know about the residence of Mr. Brown? He knew he wasn't at the official address. He knew he was found at this address. Was there anything else? Your Honor, yes. The additional factors that this probation officer had to his background was that he knew that throughout almost the entirety of the period of supervision that Mr. Brown, Mr. Bush that is, had lived at this apple address, that he had only been found at the Santos address on one occasion in May of 2003, three months prior to Officer Brown locating him at the apple address at the time of his arrest. He knew that the prior Mr. Bush at the Santos address where a third party had sent a letter in June to the probation officers, to the probation officer saying that Mr. Bush was living there. That wasn't a letter from Mr. Bush himself. And he knew that he was, he himself, that is Officer Brown had had difficulty in finding Mr. Bush at the Santos address as had his predecessor and probation officer he had inherited the case from. So those are the things, that is the context that Officer Brown had the case when he was there at the doorstep and found Mr. Bush at the apple address. Has Mr. Valladares noted that there may be some, and Your Honors have noted that there's a case en banc, the Motley case where this issue of probable cause and reasonable suspicion remains to be decided. In this case I would submit falls outside the parameters of that discourse. This is one where the court could easily find that there was probable cause at any given juncture for Officer Brown to have found. It would probably be pretty hard to say, at least from my perspective, that when he arrived at the door that he had, when he was knocking at the door that he had probable cause to believe that Bush resided at that apple-land address. He may have had good reason, you know, he had good reason to be there. He'd been able to locate him at the, at the, a reasonable probation officer would look in the file and see where he previously lived and go check it out. Yes, Your Honor. But I don't, you know, I think it's hard to say that that's, that that's probable cause to believe that he lived there and that was his residence. Judge Trott asked when did the search begin and when he, and I gather by your answer what you meant is when Bush allowed him, showed him his room and then he searched the addressers. That would be the government's position that the search commenced at that time and at that time. In response to Judge Trott's question, the response is that that's when he had probable cause to search the area that was under his control. Yes, Your Honor, I would take that position and that he had probable cause after having been directed to what Mr. Bush arguably characterized as being the room he stayed in to believe that this was his residence or property under his control. Couldn't you also say that the search began when he entered the door and said, show me around? Your Honor, that could be one argument. And going to the room was just an extension of that. That is an argument. I would, I think that that argument is, from the government's position, is an inferior argument and that actually that this was a cooperative endeavor to that point where this probation officer was just trying to exercise the very fundamental aspect of the relationship between a probation officer and the probationer, that is, determining where he lives so that he can monitor and properly supervise him. The search, I see my time is up, and thank you very much. Thank you. Yes, sir. By way of clarification, I think it's important to note that the record doesn't have any information that would lead us to believe that the prior officer, Officer Noyes, who was the officer that was in charge of Mr. Bush, could not find him at the Santos address. In fact, that's what Officer Brown testified to, that the record, that his subject chronology did not have any information that would lead one to believe that the officer could not find him at that address. In fact, as Mr. Reed stated, just a month before, the month of June, he had received a letter in which it stated that Mr. Bush, Officer Noyes, had received a letter in which it stated that Mr. Bush resided at that address, at the Santos address. I think also it's important to note, especially in light of the question that, one of the questions that Mr. Reed was asked, that if we compare the quantum of proof that existed in this case when Officer Brown arrives at that door with what probation officers had in cases such as Daley, in cases such as Harper, or in cases such as Watts, all cases decided by this circuit, in all those cases there was significantly more proof. There had been extensive surveillance conducted. The individuals had been seen going into those houses. In most of those cases, individuals had been seen with their own keys. So again, I believe that that's a critical point to keep in mind in judging whether there was enough cause in this case or not. I just have one minor question for you. Does the smell of marijuana make any difference at all? I don't think so. I don't think how that has to do with a possessory interest in the location. Did he deny at any time that that was his room where the gun was found? Yes, after the commencement of the search he stated that he didn't live there. But before he said it was his room. Before, according to what the officer said, he said that it was his room. After, he denied that he lived there. The officer said, show me your room, and he took him to the bathroom. That's correct. That is the correct way of putting it, yes. Thank you very much. The matter will be submitted. Thank you very much for your argument.
judges: Trott, T.G. Nelson, Paez